

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-4-2009

# G.N. v. Bd Ed Twp Livingston

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2337

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

## Recommended Citation

"G.N. v. Bd Ed Twp Livingston" (2009). *2009 Decisions.* Paper 1929.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1929

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-2337

G. N. and S. N.,
On Behalf of J.N., a minor

v.

BOARD OF EDUCATION OF THE TOWNSHIP
OF LIVINGSTON

G.N. and S.N.,
                                        Appellants

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil No. 05-cv-03325)
District Judge:  The Honorable Joseph A. Greenaway

Submitted Under Third Circuit LAR 34.1(a)
November 18, 2008

Before:  BARRY, CHAGARES, Circuit Judges, and COHILL, Jr.,* District Judge

(Opinion Filed: February 4, 2009)

OPINION

_____

*  Honorable Maurice B. Cohill, Jr., Senior United States District Judge for the Western
District of Pennsylvania, sitting by designation.

BARRY, <u>Circuit Judge</u>

Appellants G.N. and S.N., parents of J.N., brought this action against the Board of Education of the Township of Livingston ("the Board"), alleging violations of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* Appellants sought reimbursement for the cost of private tuition and other declaratory relief. They now appeal the order of the United States District Court for the District of New Jersey which denied their motion for summary judgment and, the parties agree, fully resolved the matter before the District Court. We will affirm.

**I.**

Inasmuch as we write primarily for the parties, we reprise only those facts that are helpful in our discussion of the case.

This case stems from a disagreement between J.N.'s parents and the Child Study Team ("CST") at her school as to the appropriate educational setting and services for J.N. J.N. has been diagnosed with Developmental Reading Disorder (dyslexia), Developmental Writing Disorder, and Attention Deficit Hyperactivity Disorder ("ADHD"), though she tests in the high average range for cognitive functioning. From the second to the sixth grade, J.N., in accordance with successive individualized education programs ("IEPs"), received special education instruction. The type of instruction varied from grade to grade, with J.N. receiving exclusively in-class support during some years and some combination of in-class support and out-of-class or "pull-

2

out" remediation in her school's Resource Center in others. Beginning in September 2003, the start of her sixth grade year, J.N. was enrolled in the school's general education program, with in-class resource program services provided in Integrated Reading and Language Arts ("IRLA"), Social Studies, and Science.

The present controversy arose during the reformulation of J.N.'s sixth grade IEP. Based upon their consultation with a private learning disabilities expert and their own assessment of J.N.'s performance under the existing sixth grade IEP, appellants requested that J.N. continue in mainstream classes with in-class resource support, but also receive homework accommodations and supplemental multi-sensory reading instruction, both during the school year and in an extended school year ("ESY") program. Appellants stressed that they did not want to return J.N. to pull-out remediation, fearing low self-esteem and reduced opportunities for socialization. The CST recommended pull-out placement in small-group Resource Center classes for IRLA to aid her in reading and written language areas in addition to the in-class support she already received.

The CST brought two draft IEPs to the January 23, 2004 IEP meeting with appellants. One draft outlined the CST's recommended pull-out program; the other called for enhanced mainstream instruction, but not the supplemental reading instruction or homework accommodation requested by appellants. After some discussion, the CST provided only the latter, "mainstream" draft IEP for appellants' review. Although appellants had pressed for J.N. to continue in mainstream classes, they rejected the

proposed IEP because it lacked some of their requests and did not contain a statement of individualized goals and objectives. The CST finalized the "mainstream" draft (the "January 2004 IEP").

Appellants filed a mediation request with the New Jersey Department of Education. When mediation proved unsuccessful, the action was transferred to the New Jersey Office of Administrative Law for a due process hearing. Appellants' administrative petition alleged that the Board had violated the IDEA, and sought an order directing the Board to (1) formulate individualized goals and objectives and monitor J.N.'s progress, (2) provide the requested supplemental instruction and accommodations, and (3) provide out-of-school tutoring to compensate for any shortcomings in the school's services. In the alternative, appellants requested reimbursement for a private school placement. Before the hearing could take place, appellants enrolled J.N. in a private school for her seventh-grade year, a school which, we note, would not appear to have provided, among other things, the least restrictive educational environment for J.N.

At the due process hearing, the administrative law judge ("ALJ") heard testimony from multiple witnesses for each side. The Board's witnesses, which included several members of the CST, testified that the January 2004 IEP offered a free appropriate public education in the least restrictive environment, and pointed to several indicators, including grades and test scores, to demonstrate that J.N. had obtained a meaningful benefit from enhanced mainstream instruction. In addition to their own testimony, appellants offered

4

outside consultant Dr. Jane Healey and learning disabilities expert Dr. Sandra Newman. Dr. Healey recommended that J.N. remain in either the mainstream or the Resource Center for her primary subjects, but that, in either case, she receive multi-sensory reading instruction. Dr. Newman acknowledged that the Board's Resource Center was adequate for J.N.'s needs, and that "virtually all but one of the modifications and accommodations set forth in the January 2004 IEP would be of educational benefit to JN." (App. 155.) The ALJ also reviewed several documents, including the IEP, the correspondence between the CST and appellants, and performance reviews. Ultimately, the ALJ concluded that the January 2004 IEP was appropriate and denied appellants' request for reimbursement.

Appellants then commenced this action in the District Court.[1] Relying exclusively on the administrative record, the Court upheld the bulk of the ALJ's order, including its conclusion that the January 2004 IEP addressed J.N.'s unique educational needs and conferred a meaningful benefit. However, the Court also noted certain factual inaccuracies in the ALJ's opinion. For one, appellants did not consent to the January 2004 IEP and, in fact, registered their rejection of the IEP on the document itself. While appellants preferred mainstream instruction to pull-out remediation, they did so with the proviso that J.N. receive supplemental reading instruction and the requested homework accommodation. The Court also disagreed with the ALJ with regard to a procedural

---

[1] As the parties seeking relief, appellants had the burden of establishing that the Board violated a substantive IDEA right. *See L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 391 (3d Cir. 2006).

5

error, pointing out that the January 2004 IEP did *not* contain a statement of individualized goals and objectives. The Court concluded, however, that this error did not deprive J.N.'s parents of the opportunity to participate in the process of formulating the IEP nor result in the loss of educational opportunity. Accordingly, the Court held that the Board satisfied its obligation to provide a free and appropriate legal education under the IDEA, and ruled that appellants were not entitled to reimbursement.

**II.**

The District Court exercised jurisdiction under 20 U.S.C. § 1415, and we have jurisdiction under 28 U.S.C. § 1291.

"When deciding an IDEA case, the District Court applies a modified version of *de novo* review and is required to give due weight to the factual findings of the ALJ." *L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 389 (3d Cir. 2006); *see also Shore Reg'l High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004) (noting that the District Court "must make its own findings by a preponderance of the evidence" but "also afford 'due weight' to the ALJ's determination"). Where, as here, a district court reviews administrative fact finding without hearing additional evidence, it is "required to defer to the ALJ's factual findings unless it can point to contrary nontestimonial extrinsic evidence in the record." *S.H. v. State-Operated Sch. Dist. of Newark*, 336 F.3d 260, 270 (3d Cir. 2003). We apply "plenary review with respect to the question whether the

District Court applied the correct legal standards under the IDEA, but we review the District Court's factual findings for clear error." *Shore Reg'l*, 381 F.3d at 199.

## III.

Appellants argue they are entitled to reimbursement on two theories: (1) the Board failed to comply with several procedural requirements for the formulation of an IEP under the IDEA and the New Jersey regulations implementing the IDEA; and (2) the January 2004 IEP did not confer a meaningful educational benefit. We will take these theories in reverse, as the resolution of the latter bears on the former.

Under the IDEA, an IEP must be individually tailored to meet the needs of a disabled child such that the child receives a "meaningful benefit" from the instruction. *L.E.*, 435 F.3d at 390. It does not require school districts to "maximize" the potential of that child. *Bd. of Educ. v. Rowley*, 458 U.S. 176, 198 (1982).

Appellants claim that the absence of the requested modifications to J.N.'s education plan—the homework accommodation and the provision of a supplemental reading program—rendered the January 2004 IEP ineffective. We disagree. Both the ALJ and the District Court concluded on the basis of the testimony adduced during the administrative hearing and several indicators of J.N.'s performance—including grades, year-to-year progress, and standardized and independent testing—that the January 2004 IEP was reasonably designed to confer a meaningful educational benefit tailored to J.N.'s specific needs. While appellants disagree strongly with the conclusions to be drawn from

this evidence, we detect no clear error in the findings of the Court.

Our conclusion necessarily disposes of appellants' procedure-based arguments—that the Board violated the IDEA by its failure to: (1) provide J.N.'s parents with proper notice and access to the alternate draft IEP; (2) offer J.N. a continuum of alternative placements; (3) consider J.N.'s individual needs in denying ESY reading instruction; and (4) include goals and objectives in her IEP. These arguments fail if for no other reason than that, as noted above, there is adequate support in the record for the conclusion of both the ALJ and the District Court that the January 2004 IEP conferred a free and appropriate public education.

Pursuant to the IDEA, a procedural violation committed during the formulation of a child's IEP is actionable only if that violation: (1) impedes the child's right to a free appropriate public education; (2) significantly impedes the parents' opportunity to participate in the decisionmaking process; or (3) causes a deprivation of benefits. *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 127 S. Ct. 1994, 2001 (2007) (citing 20 U.S.C. § 1415(f)(3)(E)(i) & (ii)); *see also W.G. v. Bd. of Trustees*, 960 F.2d 1479, 1484 (9th Cir. 1992) (holding that only "procedural inadequacies that result in the loss of educational opportunity or seriously infringe the parents' opportunity to participate in the IEP formulation process clearly result in the denial of a [free and appropriate public education]") (citations omitted); *Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 994 (1st Cir. 1990) (en banc) ("Before an IEP is set aside, there must be some rational basis to

believe that procedural inadequacies compromised the pupil's right to an appropriate education, seriously hampered the parents' opportunity to participate in the formulation process, or caused a deprivation of education benefits.") (citations omitted).

After carefully reviewing the administrative record, the District Court determined that, contrary to appellants' claims, the January 2004 IEP was the product of a collaborative effort between the CST and J.N.'s parents and was designed to address J.N.'s needs. Appellants' frustration with the end-product of that collaboration does not diminish the fact that the IEP—had appellants agreed to its implementation—would have conferred a meaningful educational benefit. Appellants cite no evidence that compels us to overturn that conclusion.

**IV.**

For the foregoing reasons, we will affirm the judgment of the District Court.